JOSEPH MEZZI, ADMINISTRATOR, *vs.* WILLIAM TAYLOR.

Third Judicial District, New Haven, January Term, 1923.
WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, Js.

It is unnecessary to count upon the statute (§ 6137) authorizing a re-
covery of damages for injuries resulting in death, whether instan-
taneous or otherwise, caused by negligence, if the facts alleged
clearly bring the case within the statutory provisions.

The complaint alleged that while waiting to board a trolley-car which
he had signaled, the plaintiff's intestate was negligently run into
by an automobile driven by the defendant, was thrown upon the
trolley track, and was run over and killed by the on-coming trolley-
car before it could be stopped. *Held* that upon proof of these facts
the defendant was liable, under the statute, for the injury and
resulting death.

While it is true that a plaintiff who alleges specific acts of negligence
in his complaint, is confined in his proof to acts of like tenor, this
rule is to be reasonably construed, especially if the allegations are
general in character and no motion for a more specific statement is
made nor any objection raised to the admission of evidence when
offered on the trial. Accordingly, the failure to carry upon an
automobile headlights of the power and intensity required by
statute (Public Acts of 1921, Chap. 400, § 41), is an act of negli-
gence which may be fairly said to be included in a charge of careless
and reckless driving and of failing to keep a proper lookout for
persons upon the highway.

Intervening negligence may be presented in two ways: one by pleading
facts by which it is directly and in terms alleged, and the other by
taking advantage of testimony adduced in the case, and claiming

(1)

the point for presentation to the jury. Proper allegations of negligence in a complaint cover any want of care on the defendant's part which may be proved in a given case, whether original and primary negligence, or intervening negligence appearing in a later phase of the transaction.

Freedom from contributory negligence is not inconsistent with the existence of intervening negligence, if the latter is the sole proximate cause of the injury.

A pedestrian who stands upon a highway awaiting the approach of a trolley-car and does not look in the direction from which an automobile may be advancing, for the space of one minute, is not necessarily and as matter of law guilty of negligence, or of a violation of Chapter 365 of the Public Acts of 1921 penalizing one for recklessly disregarding his own safety or the safety of others in his use of a highway. The statute is to be considered by the jury in connection with all the evidence in the case touching the conduct of the pedestrian and its relation to the issue of proximate cause; but the situation is one in which the jury are to determine the standard of conduct—that of the prudent man—and also whether that standard was met on the occasion in question.

The plaintiff in his complaint and on the trial did not claim negligence upon the part of the motorman of the trolley-car, and the trial judge so told the jury in his charge. *Held* that such remark did not eliminate the question of the motorman's negligence from the case, nor, so far as the record disclosed, was the defendant prevented by any ruling of the court from showing, if he could, that the motorman's negligence and not his own, was the real, efficient and proximate cause of the injury.

The jury were instructed that they might consider the extent of the injuries to the automobile itself from the force of the impact with the decedent and with the trolley-car, also the damage to the latter, and the distance that the automobile traveled after first striking the deceased and the front of the trolley-car, until it was brought to a stop by the defendant. *Held* that such instruction, when read in the light of the charge as a whole, did not assume, as the defendant contended, that the trolley-car was in fact at rest and that the motorcar in fact struck the decedent, inasmuch as the jury were elsewhere distinctly informed that these questions were in dispute and for their determination.

Argued January 19th—decided May 3d, 1923.

ACTION to recover damages for causing the death of the plaintiff's intestate by negligence, brought to the Superior Court in New Haven County and tried to the jury before *Haines, J.;* verdict and judgment

for the plaintiff for $6,000, and appeal by the defendant. *No error.*

*Cornelius J. Danaher*, with whom, on the brief, was *Jacob P. Goodhart*, for the appellant (defendant).

*Charles J. Martin* and *Bertrand B. Salzman*, for the appellee (plaintiff).

KEELER, J. The significant portions of the complaint are, in substance, that the plaintiff's intestate was standing upon a main highway between Wallingford and North Haven at a point about opposite a white pole where trolley-cars were accustomed to stop to take on and discharge passengers, and about fifteen feet from the northerly side of a crossing known as Tolles Crossing, over which both trolley and steam tracks were laid, and that said tracks were upon the extreme westerly side of the highway; that at that time and place a trolley-car was approaching said crossing, which car the deceased and his companion had signaled to stop for them to board the car, and that while the plaintiff's intestate was thus standing on the highway, the defendant, driving his automobile southerly on the same highway, struck the plaintiff's intestate and threw him forward under the wheels of the approaching trolley-car, and in such close proximity to its wheels that the motorman of the car was unable immediately to stop the car, and that the left wheel of the car went over the arm and upon the chest of the deceased, causing injuries resulting in his instant death.

All of these facts the jury could reasonably have found true upon the evidence offered in the case, and could also have found that defendant's automobile was badly damaged, was bent and broken

upon its right-hand side, and that the right headlight was smashed. Also that at the point where the defendant approached the deceased there was a clear range of vision of fifteen hundred feet in either direction; that the defendant did not see the trolley-car until he was about to hit it, and that the said car was fully lighted and had a bright headlight in front; that this car was almost immediately stopped, coming to a standstill within eight feet of the point where it was when the automobile struck the deceased.

The defendant took the witness stand in his own behalf, and upon cross-examination and without objection testified that he was familiar with Tolles Crossing and knew that for quite a long distance in approaching the crossing from the north objects could be seen in the highway within the range of vision for at least one thousand feet. He also testified that he had knowledge that it was a dangerous crossing, and that there was a trolley stop there to receive and discharge passengers. On this particular night his automobile was equipped with headlights that would only disclose an object ahead of it in the highway for seventy-five feet, and under the particular atmospheric conditions would not disclose an object more than thirty feet ahead of it in the highway. He also testified that he could stop the automobile at the speed in which he was then traveling, under all the conditions in approaching Tolles Crossing, in at least fifteen to twenty-five feet.

The jury might also have found that the defendant did not see the plaintiff's intestate or his companion on the highway, and did not see the trolley-car until just as he was about to strike it with the automobile; he did not blow his horn or sound any warning on approaching the plaintiff's intestate in the highway; also that, as the defendant approached Tolles Crossing,

there was no traffic or other objects in the highway at the crossing to prevent turning his vehicle to the left and avoid striking the plaintiff's intestate or the trolley-car; also that the defendant did not slacken the speed of his motor-vehicle or in any manner attempt to stop it as he approached the plaintiff's intestate in the highway, and continued on after striking the plaintiff's intestate at approximately the same speed that he had been maintaining prior to striking him; also that deceased and his companion, while awaiting the trolley-car, stood for about two minutes watching it approaching from the south, but that during the first minute they watched the roadway to the north for automobiles coming from that direction but saw none, and during the last minute both were looking at the trolley-car which they intended to board.

From claimed proof of the defendant the jury might have found that the night of the day of the occurrence in question was dark with rain or a fine mist falling and that traffic was heavy, that the speed of defendant's car did not exceed twenty miles an hour, and that in the vicinity of Tolles Crossing the speed did not exceed fifteen miles an hour, since, as at that place there was a slight down-grade, he had reduced speed and also had blown his horn, and kept a sharp lookout and was driving close to the right-hand side of the road; that directly in front of defendant and about fifty feet distant was another automobile proceeding in the same direction; also that as the defendant approached said Tolles Crossing, he suddenly saw in front of his car and to the right the deceased and one other man, probably two, standing in the highway; that one man ran to the right of his car and one to the left of it; that the man who ran to the right of his car stumbled and fell directly in the path of the approaching trolley-car; also that when

the defendant saw said man fall to the track in front of the approaching trolley-car he turned his car sharply to the right and came into collision with the trolley-car directly afterward, and that until said time the defendant had not seen the trolley-car; also that defendant did not strike the deceased with his car, and that the trolley-car proceeded beyond the point where the collision occurred between it and the automobile, a distance of about fifty-five feet, and that the automobile stopped about six feet beyond the rear end of the trolley-car.

Negligence was alleged by the plaintiff in that, at the time the injury was inflicted on his intestate, defendant was operating the automobile in a negligent, careless and reckless manner at a high and unreasonable rate of speed, without keeping a proper lookout for persons on the highway in front of him, without giving a timely signal, and without reducing his speed upon approaching this crossing where persons were accustomed to board or alight from trolley-cars, and without having his automobile under such control as to enable him to bring it to a stop in time to avoid striking the plaintiff's intestate.

The assignments of error, twenty-three in number, are somewhat repetitious; many of them stating an objection already made in slightly different form. Counsel for defendant has, however, grouped these in his brief, so that the principal points advanced may be largely reduced, and such an arrangement can best be followed in considering the case. Reasons of appeal numbered seven to twelve inclusive, with which counsel group numbers fifteen and sixteen, the latter two considering the case from the view point of damages, relate to the right of recovery upon the allegations of the complaint as related to the existing statute concerning claims resulting from a negligent

killing.   Plaintiff objects to any notice being taken
of this point, in that there is nothing in the finding
to show that such a question was raised or urged
upon the trial.   In part E of the finding the trial
judge includes these claims as stated by the appellant,
and it is fair to assume that they were made at some
stage of the trial.   The defendant moved for a di-
rected verdict in his favor, and also to set aside the
verdict as rendered, and in either of such motions this
claim might properly have appeared, and defendant
states in his brief that they were so made.   As urged
before us, the claim is that an action of the kind now
considered is purely statutory, and the facts alleged
in the complaint must show that the action is based
upon the statute, that relief is claimed by virtue of its
provisions, and that all of the terms of the statute
have been complied with.   Applying this rule, defendant
says that the complaint does not count on the statute
at all, since its allegations are to the effect that the
trolley-car caused the injuries resulting in the death
of Mezzi, and that the statute is not for the purpose
of giving an action for injuries merely, but for injuries
resulting in death only.   In this claim we think counsel
misconstrue the complaint and misinterpret the statute.
After the construction of the statute in *Murphy* v.
*New York & N. H. R. Co.*, 30 Conn. 184; *Goodsell*
v. *Hartford & N. H. R. Co.*, 33 Conn. 51, and *Kling*
v. *Torello*, 87 Conn. 301, 87 Atl. 987, there should be
no doubt about the applicability of the law to the
state of facts as plead.   The case last cited holds that
the right of action arising from any injury to a de-
ceased person by reason of sufferings or disability
during life is continued in his personal representative
after death with an enlarged right of recovery for
ensuing death, and also that instantaneous death
may give rise to a right of action confined as to recovery

to the event of death. The complaint purports to set forth the exact facts connected with the transaction, and is adequate as counting upon the statute; there is no defect in the allegation, and the claimed proof shows no variance.

It is further urged as error, that the trial court submitted to the consideration of the jury two issues not raised by the complaint or any other pleading in the case. Complaint is made, in the first place, that the court charged the jury upon the question of defendant's negligence in respect to the character of the lights upon defendant's car, in that they did not conform to the statutory provisions in that regard, notwithstanding that nothing specifically appears in the complaint with reference to defective lights upon the car. Evidence was received with reference to the character of these lights, and claim was made by plaintiff that the same were defective and not in accordance with statutory provisions. The court, at the request of plaintiff, explained to the jury the provisions of the Public Acts of 1921, Chapter 400, § 41, subsection c, regarding the requirements therein contained as to visibility of lights, and charged that if the jury found that the headlights upon defendant's car had not the power required by the enactment last referred to, and that such defect of power and intensity of light was a proximate cause of Mezzi's injury, then plaintiff should have a verdict in his favor. The court, however, instructed the jury that evidence as to headlights was to be considered in connection with all the other evidence.

The claimed negligence existing in the case regarding the defective lighting of the car, was fairly comprehended in and consistent with the negligent acts alleged in the complaint. Not to have proper lights was reasonably comprehended under the allegation

of careless and reckless driving, and, more particularly, the jury might reasonably have found that in using headlights which were effective less than one-half of the distance required by law, the defendant could not and did not keep a proper look-out for persons upon the highway in front of him. The evidence as to the lights came in without objection and was clearly relevant under at least two of the specifications of negligence. If open to objection when offered, objection should have been made, or if defendant's counsel had reason to suppose that plaintiff intended to rely upon some claimed negligent act not specifically set forth, he had the opportunity to move for a more specific statement; and clearly, at the commencement of the action, the defendant was in a position to know far better than the plaintiff, whose intestate was dead, the nature of his lighting equipment, and whether or not the existence of any defect therein might be made the basis of a claim by plaintiff.

It is true that we have uniformly held that where a plaintiff makes definite allegations of particular forms of negligence, he is confined in his proof to the tenor of his allegations, but the rule is to be reasonably construed, and, in the lack of a motion for more specific statement, such allegations as are contained in the complaint should receive a reasonably comprehensive construction. A required dividing up of alleged negligent acts into very minute detail can easily be carried too far, and would deprive the plaintiff of favorable testimony developing at the trial of which he was previously ignorant, but of which the defendant was fully advised. See, as to the subject generally, *Davis* v. *Guilford*, 55 Conn. 351, 11 Atl. 350; *Anderson* v. *United States Rubber Co.*, 78 Conn. 48, 60 Atl. 1057; *Simeoli* v. *Derby Rubber Co.*, 81 Conn. 423, 430, 71 Atl. 546.

In the second place, it is contended by defendant that the issue of intervening negligence was not properly in the case, because it first appeared in the charge to the jury, because of instruction asked by the plaintiff. Defendant claims that this ground of negligence was not alleged in the complaint, and, apparently relying on *Russell* v. *Vergason*, 95 Conn. 431, 434, 111 Atl. 625, that the claim must be specifically set forth in the complaint to justify a recovery thereon. It is true that in the case cited we said: "That feature [intervening negligence]. . . was not presented in the pleadings, nor upon the trial, and we may not sustain a verdict upon an issue present in the evidence but not made an issue in the case." In this regard we state two ways in which the issue may be presented, one by pleading facts by which it is directly and in terms alleged, the other by taking advantage of testimony adduced in the case and claiming the point for presentation to the jury. We did not state that such a claim must be plead. Under our practice this claim has been plead, but it is ordinarily raised by the second method mentioned in the extract from the opinion just quoted. Pleading the claim is not necessary. The usual and proper allegations of defendant's negligence in a complaint cover any want of care on his part which may be proved in a given case, whether original and primary negligence, or intervening negligence appearing in a later phase of the transaction. Further urging this claim, defendant calls attention to the fact that plaintiff had plead his own freedom from contributory negligence, and he could not sustain this allegation "without destroying the basis for the application of a supervening negligence or last-clear-chance doctrine." The plaintiff's burden of proof is to show that he was free from contributory negligence of a sort that the law regards as such, that

is, conduct proximately, materially and essentially contributing to his injury; without proving this fact he cannot recover, but if his proof does accomplish this, he has satisfied the requirement of negating contributory negligence.

As to both of the claims last considered, it may also be said that there are other and unrelated allegations properly plead, and apparently supported by reasonable evidence, upon which the verdict in the case may be sustained.

The defendant further claimed that the deceased, in standing upon the street awaiting the approach of the trolley-car and not looking in the direction from which defendant's automobile might be approaching for the space of one minute, violated Chapter 365 of the Public Acts of 1921, which imposes a penalty upon a pedestrian negligently and recklessly using a street, or for recklessly disregarding his own safety, and hence became guilty of negligence as a matter of law. The court refused so to hold, but did explain fully to the jury the bearing of the enactment, and instructed it to consider its provisions with the other evidence in the case as to the conduct of the deceased and in connection with the issue of proximate cause. In so doing the trial court did not err. The defendant's counsel strenuously insists that the provision of the statute just cited furnishes a definite legal standard of conduct, which should have been so stated to the jury as a matter of law, with instruction merely to find the fact of the position in which the deceased placed himself, and his conduct while there. The statute and all evidence in the case considered, clearly develops a situation where it was incumbent upon the jury to find the standard of conduct (that of a prudent man), as well as to find whether the conduct of the deceased measured up to standard

fixed by it. The case comes entirely within the ruling of this court in *Farrell* v. *Waterbury Horse R. Co.*, 60 Conn. 239, 21 Atl. 675, 22 id. 544, and numerous cases, which we need not cite, following the authority of that case.

It was claimed by defendant, and he offered to prove, that the deceased stumbled and fell directly in front of the trolley-car, and thereby sustained the injury complained of; and he now claims that the court erred in assuming and instructing the jury that because, in paragraph five of the complaint, the plaintiff alleges that his intestate was thrown in front of the trolley-car in such close proximity to its wheels that the motorman of the car was unable to bring his car to a stop and hence not negligent, that the question of the negligence of the motorman was not in the case. The court merely told the jury that the plaintiff did not claim such negligence. It was open to the defendant to show negligence in a third party if he could, and it does not appear from the record that any ruling of the court infringed his right so to do, and to show that the motorman was negligent and that his neg-ligence was the real, efficient and proximate cause of the injury. Certainly none of the claimed proofs in the case furnishes any foundation for such a claim.

Defendant lays great stress upon his 20th assignment of error which concerns a portion of the court's charge, which was, in effect, that the jury might consider the extent of the injuries to the automobile itself from the force of the impact with the deceased and with the trolley-car, also the damage to the trolley-car and the distance that the automobile traveled after first striking the deceased and the front of the trolley-car, until it was brought to a stop by defendant.

The alleged error in this charge is that the court assumes that the trolley-car was at rest and also that

the motorcar struck the deceased.  This does not appear to be a fair inference, when the charge is read as an entirety.  Elsewhere the court instructed the jury that these questions were in dispute and for its determination, and it is quite evident that the jury were not to consider the matters submitted to it by the portion of the charge just referred to, unless such facts appeared in evidence as would justify a finding of a collision of the motorcar with the trolley-car at rest, and also that the former actually hit the deceased.  If both the trolley-car and the motorcar were in motion at the time of the collision, the extent of the harm thereby inflicted on the latter would still be of some evidential value, although less than if the trolley-car had come to a stop.

The other errors assigned are not of a character to require attention, and are practically disposed of by those previously herein considered.

There is no error.

In this opinion the other judges concurred.